SELECTMEN OF FRAMINGHAM *vs.* BOSTON AND ALBANY RAILROAD COMPANY & others.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY & another.

Middlesex.   November 7, 1928. — June 27, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Railroad. Equity Jurisdiction*, Abolition of grade crossing of railroad. *Way*, Public: abolition of grade crossing of railroad. *Equity Pleading and Practice*, Decree, Report.

Upon a petition in the Superior Court for the abolition of a grade crossing under G. L. c. 159, §§ 65 *et seq.*, a judge hearing a motion by the petitioner for the appointment of commissioners under § 65 excluded

evidence as to the financial condition of the railroad corporation concerned, ordered the entry of an interlocutory decree appointing commissioners and reported the petition for determination by this court of the question, whether the decree was proper, "without considering whether or not the surrounding facts and circumstances made the appointment of a commission either advisable or desirable and without receiving . . . [such evidence]." The report did not show what the "surrounding facts and circumstances" were. *Held,* that

(1) In the circumstances, this court could not consider the effect of the "surrounding facts and circumstances" upon the propriety of the decree;

(2) On the record, the only question for this court was the admissibility of the evidence excluded; and that question was treated by this court as the sole matter intended to be reported.

In general, in proceedings for the abolition of a grade crossing under G. L. c. 159, §§ 65 *et seq.,* all matters of fact bearing on the practical expediency of abolishing the crossing are to be considered solely by the commissioners appointed under § 65; and, at the hearing by the Superior Court of a motion for the appointment of commissioners in such proceedings, evidence as to the financial condition of the railroad corporation concerned properly was excluded.

A decree of the Superior Court in such proceedings, appointing commissioners for the limited purpose of determining "whether or not the security and convenience of the public require the abolition of . . . [the crossing in question] and reporting to this court such determination and nothing more," although it may be expedient in the circumstances, is not warranted by the terms of §§ 70, 74, which contemplate a single general reference to the commissioners to consider all the matters specified in such sections at one time and to make one report thereon.

EIGHT PETITIONS for the abolition of grade crossings under R. L. c. 111, §§ 149 *et seq.* (now G. L. c. 159, §§ 65 *et seq.*), filed in the Superior Court on October 11, 1905, August 10, 1912, and July 19, 1913.

The petitions were heard by *F. T. Hammond,* J., upon motion by the petitioners for the appointment of commissioners under § 65. The interlocutory decree described in the opinion was entered by order of the judge, who reported his action for determination by this court.

*P. B. Buzzell,* (*J. M. Merriam & J. E. Luby* with him,) for the petitioners.

*J. L. Hall,* for the respondents New York, New Haven and Hartford Railroad Company and Old Colony Railroad Company.

RUGG, C.J.    These are eight petitions for the abolition of

grade crossings in the town of Framingham consolidated in one report.   The first six petitions were filed in 1905, another in 1911, and the last in 1913.   In one, the New York, New Haven and Hartford Railroad Company and the Old Colony Railroad Company alone are respondents.   In the other seven, the Boston and Albany Railroad Company, the New York Central Railroad Company, and in some cases a now defunct street railway corporation, are the respondents.   The New York, New Haven and Hartford Railroad Company contends that the physical situation is such that a raising of the track to abolish the crossings described in these seven petitions could not be accomplished without involving the two crossings described in the petition in which it is a respondent.   The petitions came on to be heard on motions for the appointment of commissioners.   The New York, New Haven and Hartford Railroad Company, hereafter called the respondent, offered evidence of its financial condition as a circumstance of importance to be considered in determining whether a commission should be appointed.   The petitioners objected to the admission of such evidence "on the ground that the court has no duty or right to hear or determine as a preliminary question of fact whether or not it is advisable or desirable that a commission be appointed, the financial condition of the respondent New York, New Haven and Hartford Railroad Company being merely one of several elements or factors for the commission to consider in its determination of the question whether the security and convenience of the public require the abolition of the crossing."   An interlocutory decree was thereupon entered, wherein it was recited that upon consideration of the petitions, "but without considering whether or not the surrounding facts and circumstances made the appointment of a commission either advisable or desirable and without receiving any evidence as to the financial condition of the respondent New York, New Haven and Hartford Railroad Company or the nature or extent of proceedings for the abolition of grade crossings on its lines elsewhere than at Framingham," and wherein it was ordered that three named individuals be appointed a commission and "the subject matter of the petitions be referred

to them as such commission for the limited purpose of hearing the parties and determining whether or not the security and convenience of the public require the abolition of the crossings and reporting to this court such determination and nothing more." The judge then reported for determination by this court "the question whether the commissioners were properly appointed for the limited purpose specified without considering whether or not the surrounding facts and circumstances made the appointment of a commission either advisable or desirable and without receiving any testimony as to the financial condition of the respondent New York, New Haven and Hartford Railroad Company or of the extent or nature of proceedings for the abolition of grade crossings on its lines elsewhere than at Framingham."

The pertinent statute, G. L. c. 159, § 65, so far as here material, is in these words: the "court may in equity, after notice . . . and a hearing, appoint a commission . . . ." These words, although differing slightly from preceding enactments covering the same subject, constitute a more succinct statement and are merely verbal changes occurring in the revision of statutes and do not alter the meaning. *Main* v. *County of Plymouth*, 223 Mass. 66, 69.

The arguments have taken a wide range, covering in detail the history of legislation of this general nature and the question whether the appointment of commissioners by the court is mandatory or permissive. It is assumed for the purposes of this decision that the words of the quoted statute confer judicial powers equitable in their nature and discretionary within proper limitations. See, for example, *Mayor & Aldermen of Northampton* v. *New Haven & Northampton Co.* 175 Mass. 430; *McNicol's Case*, 215 Mass. 497, 502; *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 69, 70. It is not necessary to enter that field of discussion because the point reported for determination, as already stated, is more narrow. Even the point reported is stated more broadly than the record discloses was raised at the trial. The only evidence offered and excluded related to the financial condition of the defendant. That is treated as the only matter intended to be reported. G. L. c. 214, § 30. *Paulino*

v. *Concord,* 259 Mass. 142.   It is conceivable that facts and circumstances might justify the refusal of a judge to appoint a commission upon such a petition, as for example, the exigencies created by the Great War.   But, without knowledge of what those facts and circumstances are, we decline to pass on the abstract question or to infer that there was error in refusing to consider them.

It has been expressly decided that evidence as to the bad financial conditions of a railroad corporation involved in a petition for the abolition of grade crossings is pertinent in connection with a hearing before the commissioners after their appointment.   "Ability to respond to financial requirements made necessary by the abolition of a crossing is a proper subject for consideration when the public security and convenience are at issue."   *Mayor & Aldermen of Lowell* v. *Boston & Maine Railroad,* 238 Mass. 328, 332.   *Boston & Maine Railroad* v. *Greenfield,* 253 Mass. 391, 399.   See *Lehigh Valley Railroad* v. *Public Utility Commissioners,* 278 U. S. 24, 34; *Erie Railroad* v. *Public Utility Commissioners,* 254 U. S. 394, 410, 411.   The question of financial ability of the railroad corporation to bear its share of the expense of grade crossing abolitions may depend in some degree upon the extent and nature of the public danger to be averted by such abolitions.   Inquiry as to expense and of ability to bear expense, as elements in any problem of grade crossing abolition, is intimately connected with other factors.   It cannot be considered in true perspective separate and alone. It is the plain purpose of the statute providing for the abolition of grade crossings that hearings in the main as to all the practical matters arising under the petition shall be held before the commission and a comprehensive report made by it.   G. L. c. 159, §§ 65–82.   *Old Colony Railroad, petitioner,* 163 Mass. 356.   *Selectmen of Hadley, petitioners,* 178 Mass. 319.   That is the underlying conception on which the statute is founded.   The chief and only trial upon the merits must be before the commissioners.   It would commonly be a waste of time and energy to permit two inquiries into the subject of financial ability to meet the expense, one preliminary before the court, and one more comprehensive in

sweep before the commission.   It is a fundamental principle in the administration of justice in this Commonwealth, in the interests alike of the public and of the parties, that there shall be one full and fair trial of the issues in any case, and a final decision as to errors of law seasonably alleged to have arisen therein, and that then the litigation shall terminate. *Boston Bar Association* v. *Casey,* 227 Mass. 46, 48.   That is the judicial policy.   It is also the policy of the General Court as manifested by numerous statutes to that end.   We should be loath to attribute a meaning to any statute in conflict with this policy unless required by words of unmistakable import.

The conclusion is that the offered evidence as to financial ability of the respondent was excluded rightly at that stage.

The decree appointing the commission restricted the scope of its duty to the determination of the single point whether the security and convenience of the public require the abolition of the crossings described in the petitions.   It is provided by G. L. c. 159, in § 70, that, if the commission "decides that the security and convenience of the public require the alterations to be made, it shall prescribe the manner and limits thereof, and shall determine which of the parties shall do the work, or shall apportion the work to be done between each of the railroad corporations and the city or town," with further provisions as to apportionment of costs not here material; and in § 74 that the commission shall also "specify what part, if any, of an existing public or private way shall be discontinued, the grade for the railroad and the way, the changes to be made in the location and grades of the railway in such public way, the general method of construction and what land or other property it considers necessary to be taken . . ."; and shall "forthwith return its decision to the Superior Court."   The only jurisdiction of the court over the subject of grade crossing abolition and the appointment of a commission is conferred by the statute.   The statute makes no provision for such limited reference and partial report as is found in the interlocutory decree.   On the contrary, the words of the statute already quoted seem to contemplate that there shall be a single general reference

of the petition to the commission, and that upon such reference the commission must perform the full duties prescribed by the statute and make a single report covering the whole field therein prescribed.   Apparently the trial judge thought that it was expedient to make the limited reference.   There is much to be said in favor of such reference as an abstract proposition.   Expediency does not justify failure to comply with the plain mandate of the statute.   Moreover, it is a general principle subject to some exceptions that trial ought not to be split in twain.   There ought to be one comprehensive hearing as to all disputed matters.   It is quite conceivable that decision upon one element in a grade crossing abolition may throw light upon or be inextricably connected with other elements in the whole problem pending before the commission.   We are therefore of opinion that, although the question is close, the limited reference embodied in the interlocutory decree in the case at bar was not justified by the statute and that there ought to have been only the general reference.

*Interlocutory decree reversed.*