GERTRUDE S. WOODWORTH *vs.* JAMES G. WOODWORTH.

Middlesex.    November 10, 1930. — November 26, 1930.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Supreme Judicial Court,* Rescript. *Probate Court,* Requests and rulings, Findings by judge, Appeal, Report by judge, New trial. *Marriage and Divorce,* Annulment. *Insane Person. Equity Pleading and Practice,* Rescript.

It *was stated* that the words " decree reversed " or " decree to be reversed," without more, in a rescript sent upon an appeal from a final decree in proceedings in accordance with equity practice, mean that the decree is voided, and import that there shall be a wholly new trial upon all the issues open on the pleadings.

After a hearing in a probate court of a petition for the annulment of a marriage on the ground that the libellee was insane at the time of the marriage, a final decree was entered annulling the marriage. Upon appeal by the libellee, the judge, without a report of the evidence, reported the material facts found by him, including a finding that the libellee was incapable of contracting marriage by reason of insanity. This court, being of opinion that the judge of probate erred in failing to rule that the burden of proving the libellee insane was on the libellant, sent a rescript, "Decree to be reversed; case to stand for further hearing in the Probate Court." A decree thereafter was entered in the Probate Court revoking the previous decree. There then was a further hearing of the case by the same judge, who ruled that the evidence received at the first hearing still would be considered as evidence before him; that either party was at liberty to introduce further evidence; and that the case would be considered and decided finally upon all the evidence, both that theretofore received and such as might then be presented. No further evidence was offered by either party. The judge then ruled, at the request of the libellee, that the burden of proving insanity was on the libellant. At the request of the libellant, he also purported to rule that the giving of the ruling requested by the libellee did not alter his previous finding of fact that the libellee was incapable of contracting the marriage by reason of insanity. A decree was entered annulling the marriage. Upon appeal by the libellee, it was *held*, that

(1) In the circumstances, the rescript did not mean that there must be a wholly new trial before another judge, or that the entry of a decree based wholly or partially upon the evidence received at the previous hearing would be improper;

(2) There was no error in the procedure adopted by the judge at the second hearing;

(3) The question, whether the libellee was incapable of contracting the marriage by reason of insanity, was largely one of fact, and the finding by the judge, based upon evidence not reported and warranted by his other findings, could not be disturbed by this court;

(4) The "ruling" given at the request of the libellant was not a ruling of law, but in substance a finding of fact that the previous finding was not changed by giving the ruling requested by the libellee;

(5) The decree was affirmed.

PETITION, filed in the Probate Court for the county of Middlesex on April 2, 1928, for the annulment of a marriage.

The petition first was heard by *Leggat*, J., by whose order a decree was entered on December 20, 1928, annulling the marriage. The case previously was before this court upon an appeal by the libellee from that decree. The judge then reported the material facts found by him at that hearing, including a finding that, by reason of insanity on the part of the libellee, he was incapable of contracting the marriage.

The evidence was not reported. The terms of the rescript sent on May 27, 1930, in a decision reported in 271 Mass. 398, are stated in the opinion. A decree was entered in the Probate Court after rescript revoking the decree of December 20, 1928.

The case further was heard by *Leggat*, J., on June 18, 1930. At the opening of the hearing the libellee presented the following requests for rulings, which were refused by the judge:

"1. The meaning of the rescript of the Supreme Judicial Court for the Commonwealth in this case, in the light of that court's opinion, is that the case is to stand for a new trial.

"2. Final decree of the Probate Court based entirely upon evidence heard by the Probate Court at the former trial of this case therein, or based in part upon that evidence and in part upon evidence heard by the Probate Court after said rescript, would be inconsistent with the order of said Supreme Judicial Court as shown by said rescript and would not be a compliance therewith."

Further proceedings at the hearing are described in the opinion. At the close of the hearing the judge passed upon the following requests for rulings by the libellee, which were stated in the record to have been filed as of June 16, 1930, "as if . . . [they] had been legally and properly presented," viz.:

"1. Sanity is presumed until the contrary appears. The burden of proving the insanity, or such mental incapacity, of the libellee as to make the attempted marriage of the libellant and libellee void or voidable rests upon the libellant.

"2. Unless the court shall find that at the time of the marriage ceremony the mental condition of the libellee was such that he was unable to understand or appreciate the significance of what was said and done in the course of the marriage ceremony, the marriage was valid and binding on the parties thereto.

"3. There is not sufficient evidence to warrant a finding that at the time of the marriage ceremony the mental con-

dition of the libellee was such that he was unable to understand or appreciate the significance of what was said and done in the course of the marriage ceremony.

"4. Unless the court should be satisfied by a fair preponderance of evidence that the libellee did not have at the time of the marriage ceremony sufficient understanding to be able to make a valid contract respecting property, or to deal with discretion in the common affairs of life, the marriage was valid and binding on the parties thereto.

"5. There is not sufficient evidence to warrant a finding that the libellee did not have at the time of the marriage ceremony sufficient understanding to be able to make a valid contract respecting property.

"6. There is not sufficient evidence to warrant a finding that the libellee did not have at the time of the marriage ceremony sufficient understanding to be able to deal with discretion in the common affairs of life.

"7. Unless the court shall find on all the evidence that the libellee's mental condition at the time of the marriage ceremony was such that he was incapable then of making a contract, the marriage was valid and binding on the parties thereto.

"8. There is not sufficient evidence to warrant a finding that the libellee's mental condition at the time of the marriage ceremony was such that he was incapable of making a contract."

The judge gave requests numbered 1, 2, 4 and 7; and refused those numbered 3, 5, 6 and 8. He gave the following ruling requested by the libellant: "2. The granting of rulings 1, 2, 4 and 7 requested by the . . . [libellee] does not in any way alter the findings of fact heretofore made by the court that at the time of the marriage the libellee was insane and because of his insanity was incapable of contracting marriage."

A decree thereafter was entered annulling the marriage. The libellee appealed.

*R. Woodworth*, for the libellee.

*G. Alpert*, (*J. P. Feeney* with him,) for the libellant.

RUGG, C.J.  This is a petition for the annulment of a marriage alleged to have occurred in form on June 6, 1925, but to have been invalid because of the insanity of the libellee.  A previous decision in the case is reported in 271 Mass. 398.  The vital part of the rescript then sent was in these words: " Decree to be reversed; case to stand for further hearing in the Probate Court."  Pursuant to that mandate, the case came on for further hearing before the trial judge who had held the earlier hearing. This was proper procedure.  *Dittemore* v. *Dickey*, 249 Mass. 95, 99, 100.  The libellee contended in substance that there should be an entire new trial, and presented requests for rulings to that effect.  The judge denied these requests and ruled that the evidence already received and heard at the first trial would be considered as then and still evidence before him and that either party was at liberty to introduce further evidence, and that the case would finally be considered and decided upon all the evidence, both that theretofore received and such as might then be presented.  The libellant offered in substance all the same evidence produced by her at the original hearing, but the offer was excluded on the ground that to receive it would be a useless expenditure of time and not required by the rescript.  No further evidence was offered by either side.  The soundness of the ruling as to the meaning and effect of the rescript presents the first question to be decided.

This proceeding was brought in the Probate Court.  St. 1922, c. 532, § 7.  In these circumstances the procedure in general accords with equity practice.  *Drew* v. *Drew*, 250 Mass. 41, 43.  *Field* v. *Field*, 264 Mass. 549, 550.

The mandate " decree reversed " or " decree to be reversed " contained in a rescript means that the decree previously entered is annulled and made of no effect. It is vacated and effaced, and no longer establishes rights of parties.  When nothing more than this appears in a rescript, the case stands for disposition upon issues raised by the pleadings.  It must be tried anew; the former trial has become of no effect.  See *Loanes* v. *Gast*, 216

Mass. 197, 199. The words "decree reversed" in a rescript in equity have in substance the same meaning as "exceptions sustained" in an action at law. Those words standing alone import a wholly new trial upon all the issues open on the pleadings. *Merrick* v. *Betts,* 217 Mass. 502. *Cheney* v. *Boston & Maine Railroad,* 246 Mass. 502, 505. In equity, as at law, this court is empowered to give additional directions as to further proceedings to be had pursuant to the rescript. *Bourbeau* v. *Whittaker,* 265 Mass. 396. *Simmons* v. *Fish,* 210 Mass. 563.

In the case at bar the rescript did not stop with the simple mandate that the decree be reversed, but it went on to say that the case was "to stand for further hearing." These words would have been superfluous if it had been intended that there should be a wholly new trial. That would have been accomplished merely by reversing the decree. The additional order that the case should stand for further hearing implies that some meaning was intended to be attributed to those words. It is fundamental in the jurisprudence of this Commonwealth, in the interests alike of suitors and the public, that there be but one full and fair trial conducted upon correct principles, and that then trials cease. *Boston Bar Association* v. *Casey,* 227 Mass. 46, 48. *Selectmen of Framingham* v. *Boston & Albany Railroad,* 268 Mass. 93, 98. *Lannin* v. *Buckley,* 268 Mass. 106, 109. The case at bar had been tried according to equity practice before one of the two judges of probate for the county; the error in that trial, as disclosed in our previous decision, was that the judge refused to instruct himself correctly as to the burden of proof. That was an error which might readily be corrected without a complete new trial. In these circumstances, the words of the rescript mean that the further hearing was to be had before the same judge and upon evidence already before him and such additional evidence as might rightly be offered. *C. W. Hunt Co.* v. *Boston Elevated Railway,* 217 Mass. 319. The mandate from this court might have been more extended, but the trial judge interpreted it correctly. See *Carchidi* v. *Kalayjian,* 264

Mass. 230. The circumstance that this case originally was heard in the Probate Court, where a bill of exceptions does not lie, *Mackintosh, petitioner,* 246 Mass. 482, gives parties no special right to an entire new trial.

It follows that there was no error in the denial of the requests for rulings presented by the libellee to the effect that the rescript required an entirely new trial and that a decree based wholly or in part upon evidence heard at the earlier trial would not be warranted.

There was no error in denying the rulings requested in various forms of words in substance that there was not sufficient evidence to warrant a finding that the mental condition of the libellee was such as to invalidate the marriage. Since the evidence is not reported in full, the finding of fact that the libellee .was insane cannot be reversed or pronounced unsupported. *Webster* v. *Webster,* 264 Mass. 551, 554. The judge reported a summary of the testimony in considerable detail. It need not be narrated. It warrants the finding made. There is nothing in this report or in the findings made by the judge to shake the force of his final conclusion. Whether a person is insane at a given time is mainly a question of fact "upon which courts have been increasingly unwilling to lay down sweeping rules." *Wright* v. *Wright,* 139 Mass. 177, 182, 183. *Sutcliffe* v. *Heatley,* 232 Mass. 231. *Sheppard* v. *Olney,* 271 Mass. 424.

It is stated in the report that the judge granted the request of the libellant that "I rule that the granting of the libellee's requests numbered 1, 2, 4 and 7 did not in any way alter the findings of fact heretofore made; that at the time of the marriage the libellee was insane and because of his insanity incapable of contracting marriage. I so ruled." It is manifest that this was not a ruling of law. It was the whole point of the earlier decision that the granting of these rulings might change the decision. It is plain that, although inaccurately phrased in the report, the meaning is that the judge found as a fact that his previous conclusion was not changed by granting the rulings. The action of the judge must be treated for

what it in truth was and not for what it was named. This point has not been urged in argument, but in the interests of accuracy of statement attention is directed to it.

*Decree annulling marriage affirmed.*